UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHERRY HILL PROGRAMS, INC.
and CHERRY HILL ACQUISITION          No. 1:21-cv-20248-NLH-SAK
HOLDINGS, INC.,

            Plaintiffs,              **OPINION**

      v.

JONAS SULLIVAN,

            Defendant.

APPEARANCES:

CRAIG M. WAGENBLAST
MATTHEW EVAN BECK
CHIESA SHAHINIAN & GIANTOMASI PC
ONE BOLAND DRIVE
WEST ORANGE, NJ 07052

        *On behalf of Plaintiffs*

AARON RICHARD KRAUSS
COZEN O'CONNOR
1650 MARKET STREET
STE. 2800
PHILADELPHIA, PA 19103

        *On behalf of Jonas Sullivan*


**HILLMAN**, District Judge

    Currently before the Court is Cherry Hill Programs, Inc.

and Cherry Hill Acquisition Holdings, Inc. ("Plaintiffs") motion

for preliminary injunction (ECF 12).  Also before the Court is

the defendant's, Jonas Sullivan's ("Sullivan"), motion to

dismiss the amended complaint for lack of personal jurisdiction.

1

(ECF 14).  For the reasons expressed below and on the record on March 21, 2022, the Court has granted in part and denied in part Plaintiffs' motion for a preliminary injunction and has denied Sullivan's motion to dismiss.

## BACKGROUND

Plaintiffs comprise a company that puts together Santa meet-and-greets and holiday photo opportunities in malls around the country. (See ECF 11 at 2).  Plaintiffs hired Sullivan in 2015 and for almost six years Sullivan served as a Senior Vice President and for a portion of that time as a board member for the company.  (Id. at 2-3).  In those roles, he had substantial access to proprietary business information belonging to Plaintiffs.  (Id.)  During his tenure, Sullivan primarily worked from a home office in California or Colorado but traveled to New Jersey for work at least three times per year.  (ECF 22 at 2).  On August 3, 2021, Sullivan announced that he would be resigning from his position and that same day copied approximately 4,000 files from his work computer onto an external USB drive.[1]  (ECF

---

[1]  Sullivan denies downloading the files for the purpose of keeping them, contending that he downloaded them that day because his laptop that day had difficulty accessing company servers and he needed the files to finish his work that day. This story strains credulity as the downloading coincided with his resignation and there is no explanation why he would need all 4,000 to complete some daily project.  In any event, the Court need not resolve this factual dispute as it is uncontested that Sullivan retained the thumb drive after he left Plaintiffs' employ, did not disclose its existence and later erased its

2

11 at 3).  "Those files include highly confidential information and trade secrets such as [Plaintiffs'] three-year business plan—a non-public strategy document containing an executive analysis on [Plaintiffs'] new revenue opportunities, sales projections, and [Plaintiffs'] competition." (Id. at 1).

At the end of his employment, Sullivan told Plaintiffs' CEO that he had not retained any proprietary company information. (Id.)  However, Sullivan continued to access Plaintiffs' proprietary information.  (Id. at 3).  Sullivan ultimately returned his work laptop to Plaintiffs at their headquarters in New Jersey but did not return the personal USB device.  (See id.)  Plaintiffs paid Sullivan severance payments in exchange for his agreement not to compete.  (Id.)

Plaintiffs initially filed this action on November 29, 2021.  (ECF 1).  On January 31, 2022, Plaintiffs filed an amended complaint.  (ECF 11).  On February 11, 2022, Plaintiffs filed a motion for preliminary injunction (ECF 12) along with a motion to expedite discovery (ECF 13).  Shortly thereafter, on February 14, 2022, Sullivan filed a motion to dismiss the amended complaint for lack of personal jurisdiction.  (ECF 14).  On March 2, 2022, the Court denied Plaintiffs' motion to expedite discovery and set the motion to dismiss and the motion

contents, conduct consistent with an intentional misappropriation of the files.

3

for preliminary injunction down for a hearing for March 21, 2022.  (ECF 19).  At the hearing by oral opinion, the Court denied Sullivan's motion to dismiss for lack of personal jurisdiction and granted in part and denied in part Plaintiffs' motion for preliminary injunction. (ECF 28, 29).  As the Court indicated on that date it would do, this Opinion supplements its oral opinion given that day.

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

This Court has original jurisdiction under 28 U.S.C. § 1331 and § 1367.

**II.  Motion to Dismiss**

**a. Standard for Motion to Dismiss for Lack of Personal Jurisdiction**

We begin with Sullivan's arguments regarding personal jurisdiction "[b]ecause the issue of whether this Court may exercise personal jurisdiction over [a defendant] is dispositive to the viability of the entire suit[.]"  See Exporting Commodities Int'l, LLC v. S. Minerals Processing, LLC, 2017 WL 5513682, *3 (D.N.J. Nov. 17, 2017).  Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd.,

4

496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 n.9 (3d Cir.1984)) (quotations and other citations omitted).  "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Id.  "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction," and "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id.

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" FED. R. CIV. P. 4(k)(1)(A).  "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted).  The New Jersey long-

arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

There are two types of personal jurisdiction.  General and specific.  "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). "The paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Olsen v. Ratner Companies, L.C., 2021 WL 912896, at *2 (D.N.J. Mar. 10, 2021) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (citations omitted)).  Specific jurisdiction may be present when the cause of action arises out of the defendant's conduct in the forum state.  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) ("[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum.").

A court in assessing the existence of specific jurisdiction undertakes a two-part test.  Trinity Packaging Supply, LLC v. Countrywide Pallet, Inc., 2019 WL 2611101, at *4 (D.N.J. June

26, 2019).  First, under the Due Process clause, the exercise of
personal jurisdiction over a non-resident defendant is
appropriate when the defendant has "certain minimum contacts
with [the forum state] such that the maintenance of the suit
does not offend 'traditional notions of fair play and
substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S.
310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463
(1940)).  A defendant establishes minimum contacts by
"'purposefully avail[ing] itself of the privilege of conducting
activities within the forum State,'" thereby invoking "'the
benefits and protections of [the forum State's] laws.'"  Asahi
Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102,
109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S.
462, 475 (1985)).  This "purposeful availment" requirement
assures that the defendant could reasonably anticipate being
haled into court in the forum and is not haled into a forum as a
result of "random," "fortuitous" or "attenuated" contacts with
the forum state.  See World-Wide Volkswagen Corp. v. Woodson,
444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S.
at 472, 475 (internal citations omitted).

    In deciding whether a defendant's contacts with a forum are
sufficient to confer personal jurisdiction over that party, the
Court must consider whether such contacts are related to or
arise out of the cause of action at issue in the case.  The

Court may exercise specific personal jurisdiction over a
defendant where the cause of action is related to or arises out
of activities by the defendant that took place within the forum
state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 414 n.8 (1984).

Second, once the Court determines that the defendant has
minimum contacts with the forum state, it must also consider
whether the assertion of personal jurisdiction over the
defendant "comport[s] with 'fair play and substantial justice'"
to satisfy the due process test.  Burger King Corp., 471 U.S. at
476 (quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it
must be reasonable to require the defendant to litigate the suit
in the forum state, and a court may consider the following
factors to determine reasonableness: the burden on the
defendant, the forum state's interest in adjudicating the
dispute, the plaintiff's interest in obtaining convenient and
effective relief, the interstate judicial system's interest in
obtaining an efficient resolution of controversies, and the
shared interest of the several States in furthering fundamental
substantive social policies.  Id. at 477 (citing World Wide
Volkswagen, 444 U.S. at 292).

**b. Analysis**

The Court holds that Plaintiffs have met their burden to
show that the Court may exercise specific jurisdiction over

Sullivan.  With regard to general jurisdiction, the Court notes
that the record shows that Sullivan traveled to New Jersey a few
times a year but was always a resident of either California or
Colorado.  The Court does not see, and Plaintiff has not
identified, contacts so continuous with New Jersey as to merit a
finding of general jurisdiction.  See Olsen, 2021 WL 912896, at
*2 (holding that occasional business travel to a forum state did
not confer general jurisdiction).

    With respect to specific jurisdiction, the Court finds that
Sullivan has the requisite minimum contacts with the state and
that exercising personal jurisdiction over him would not offend
notions of fair play and substantial justice.  See Helicopteros
Nacionales de Colombia, S.A., 466 U.S. at 414 n.8; Burger King
Corp., 471 U.S. at 476.  In terms of Sullivan's contacts with
New Jersey, the Court notes several key facts.  First, Sullivan
traveled to New Jersey for work several time a year and for
weeks at a time to oversee major projects relating to
Plaintiffs' core business operations.  (ECF 22 at 3).  The Human
Resources, IT, and Finance Departments, with which Sullivan had
to interact, were located in New Jersey.  (Id. at 11).  In
addition, when Sullivan ultimately resigned, he returned his
work laptop to New Jersey.  (Id. at 3).  Sullivan was high up in
the management of the company and it is clear that the company
had major clients in New Jersey and that New Jersey was one of

9

the top five revenue generators for the company.  (Id. at 12).

Sullivan also served on the board of directors for the company and made a substantial personal investment in the company, showing that he was very much emmeshed with the New Jersey company and stood to benefit from its success and risk that investment as a shareholder of a closely held corporation. (Id. at 15).  The fact that other executives worked in different parts of the company and that Sullivan primarily worked from his home office out of state does not change the Court's view when considered with the other evidence.  See Numeric Analytics, LLC v. McCabe, 161 F. Supp. 3d 348, 354–55 (E.D. Pa. 2016) (finding specific jurisdiction where "Defendants directed their activities to Pennsylvania because Defendants signed employment contracts with a Pennsylvania company, continuously communicated with a Pennsylvania company about their employment, ran all invoices for the work they performed through Pennsylvania, and were paid by their Pennsylvania employer."); M3 USA Corp. v. Hart, 516 F. Supp. 3d 476, 493 (E.D. Pa. 2021) (where former employee signed a contract based out of PA, traveled to PA for work a few times a year, and worked with employees and clients in PA, and returned her work laptop to PA, exercise of specific jurisdiction was appropriate).  Further, since the company was headquartered in New Jersey and central to this case is Sullivan's employment relationship with Plaintiffs, it would not

10

offend notions of fair play and substantial justice for Sullivan to be subject to personal jurisdiction in this forum.  Numeric Analytics, LLC, 161 F. Supp. 3d at 355–56 (holding that where breach of the employment contract was the issue, it weighed in favor of finding personal jurisdiction where the employee's company was headquartered and that it was fair to do so). Ultimately, while a close question, the totality of the circumstances militates toward a finding of specific jurisdiction. Id. at 355.  ("Though I believe the question is close, I find that jurisdiction exists. Each of these, by itself, might not be enough to confer jurisdiction.").  Thus, the Court denies Sullivan's motion to dismiss for lack of personal jurisdiction.

### III. Motion for Preliminary Injunction

#### a. Standard for Preliminary Injunction

A party seeking the extraordinary remedy of preliminary injunctive relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." Rush, 287 F. App'x at 144.

11

### b. Analysis

The Court finds that there is a likelihood of success on the merits at least with respect to Plaintiff's claims regarding the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.  The elements are similar under both laws.  To make out a claim under the Defend Trade Secrets Act, a plaintiff must show "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." Yammine v. Toolbox for HR Spolka z Ograniczona Odpowiedzialnoscia Spolka Komandytowa, 2022 WL 791203, at *5 (D. Ariz. Mar. 14, 2022).  The New Jersey counterpart has similar requirements for stating a claim.  Plaintiff can succeed on its misappropriation claim only if it proves that Sullivan used its "trade secrets," without their consent, and either (i) at the time of such use, knew or had reason to know that he acquired the secrets through improper means; or (ii) before a material change of position, knew or had reason to know that the information consisted of a trade secret and that knowledge of it had been acquired through improper means.  Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., 157 F. Supp. 3d 407, 424 (D.N.J. 2016).

The facts alleged in this case map onto the elements of

each statute.  Plaintiffs allege that Sullivan took customer
lists, information on business strategies and financial data
that were propriety company information.  They allege that it
could damage them because Sullivan could steal their business.
Plaintiffs further allege that Sullivan knew that he was taking
proprietary information from them by impermissibly copying
company data onto a USB before returning his company laptop.
They allege that Sullivan knew that the information was
proprietary.  Given the detail of the facts alleged, the Court
finds the first factor, likelihood of success on the merits, to
be satisfied.

The factor regarding the likelihood of irreparable harm is
a closer call but ultimately tips in Plaintiff's favor.  Most
critical to the Court's determination is the fact that Sullivan
erased the contents of the USB when Plaintiffs asked him to
preserve and return the information that he took.  In addition,
it appears that Sullivan was told multiple times by the company
CEO not to retain any company information and there is evidence
in the record that he affirmatively misrepresented to Plaintiff
that he had not retained anything.  Given Sullivan's false
representations that he did not retain proprietary company
information, his destruction of those materials when he was
directed to return, and the clear possibility given this lack of
candor and cooperation that he remains in possession of copies

of these easily transferred material, the Court finds a likely threat of irreparable harm without the issuance of a preliminary injunction. Jackson Hewitt, Inc. v. Barnes, 2011 WL 181431, at *4 (D.N.J. Jan. 18, 2011) ("Where a party is in possession of another party's confidential information and is poised to use or disclose such information, either personally or through an agent such as a parent or close associate, there is a likelihood of irreparable harm.")

The control of Plaintiffs' proprietary business information by Sullivan when he was not supposed to have it and the fact that he misrepresented that he had such information poses a legitimate risk to Plaintiffs' business interests because any disclosure by Sullivan could not be remedied after any trial. Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d 204, 229 (D.N.J. 2009) ("In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") However, since there is no evidence that Plaintiffs' information is actually in the hands of a competitor, the Court narrowly tailors the preliminary injunction to enjoin Sullivan from using Plaintiff's proprietary information but does not issue a broader non-compete order. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 199 (3d Cir. 1990), holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421 (3d

14

Cir. 1994) (holding that a court issuing a preliminary

injunction must tailor it so that it is not overly broad).

    In terms of the balance of harms, the potential harm that

Plaintiffs might suffer from the wrongful dissemination of its

trade secrets is much weightier than any delay to Sullivan in

using trade information that is not secret.  A preliminary

injunction by this Court would not harm Sullivan as it would

simply preserve the status quo and prevent him from using

information that he does not have any right to use in any event.

Swartzwelder v. McNeilly, 297 F.3d 228, 242 (3d Cir. 2002)

(implicitly noting that preserving the status quo may be

relevant in balancing harms).

    Finally, a preliminary injunction is in the public

interest.  There is a recognized interest in the Third Circuit

in upholding trade secrets.  Bimbo Bakeries USA, Inc. v.

Botticella, 613 F.3d 102, 119 (3d Cir. 2010) ("[T]here is a

generalized public interest in upholding the inviolability of

trade secrets and enforceability of confidentiality

agreements.") (internal quotation marks omitted).  Sullivan's

interest in shaping the contours of his employment does not

outweigh the general public interest in protecting trade

secrets.  Id. ("We are satisfied on the facts of this case that

the public interest in preventing the misappropriation of

Bimbo's trade secrets outweighs the temporary restriction on

Botticella's choice of employment.")  Because it comports with the public interest and the other factors so counsel, the Court grants Plaintiffs' motion for a narrow preliminary injunction.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court denies Sullivan's motion to dismiss and grants in part and denies in part Plaintiff's motion for a preliminary injunction.

This Opinion corresponds to Orders ECF 28 and 29.


Date: April 12, 2022          s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

16